IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| WILLIE JOSEPH KEELS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　　Defendant. | CIVIL ACTION: 4:11-cv-3018-TER<br><br><br><br><br>ORDER |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**I. PROCEDURAL HISTORY**

Willie Joseph Keels ("Plaintiff" or "Claimant") filed an application for DIB and SSI alleging inability to work since February 10, 2008.[1] His applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was

---

[1] At the hearing, the alleged onset date was amended to December 1, 2008. (Tr. 30).

held on September 13, 2010, before an Administrative Law Judge ("ALJ") at which the Plaintiff appeared and testified along with a vocational expert (VE). The ALJ issued an unfavorable decision on September 18, 2010. (Tr.13-21). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on November 4, 2011.

## II. FACTUAL BACKGROUND

The Plaintiff was born on February 10, 1954. Plaintiff has at least a high school education and past work as a truck driver.

## III. DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

(1) The ALJ performed a flawed credibility analysis; and

(2) The ALJ failed to carry his burden at step five of the sequential evaluation process.

(Plaintiff's brief).

In the decision of September 18, 2010, the ALJ found the following:

1. Claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

2. Claimant has not engaged in substantial activity since February 10, 2008, the alleged onset date (20 CFR 404.1571 *et. seq*. and 416.971 *et. seq*.).

3. Claimant has the following severe impairments: glaucoma, cataracts, and right eye blindness (20 CFR §§ 404.1520 (c) and 416.920(c)).

4.  Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; Claimant must avoid workplace hazards such as machinery and unprotected heights. He must also avoid activity requiring good binocular vision.

6.  Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  Claimant was born on February 10, 1954 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found disabled or not disabled at a step, further inquiry is unnecessary. If it can not be determined if an individual is disabled or not disabled at a step, further inquiry is necessary by advancing to the next step in the sequential evaluation. 20 C.F.R. § 404.1520(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff

5

can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  ARGUMENTS AND ANALYSIS

**Credibility**

Plaintiff contends that the ALJ erred in his credibility assessment. Specifically, Plaintiff asserts that he does not dispute that he does not meet the criteria of any listing but argues that the ALJ erred in finding that his statements about the degree to which his vision was limited were not entirely credible. Plaintiff argues that the "ALJ reviews Mr. Keels' various visual acuity scores, but fails to even acknowledge evidence regarding his rapidly constricting field of vision." (Plaintiff's brief, p. 6). Additionally, Plaintiff argues that the ALJ failed to acknowledge the progressive nature of his impairments in finding that there were inconsistencies between the statements made prior to and at the hearing.

Defendant argues the ALJ reasonably evaluated the credibility of Plaintiff's subjective complaints setting forth in his decision the proper standard for evaluating the credibility. Defendant asserts the ALJ first noted that Plaintiff's complaints to his treatment providers were not as severe as the allegations he made at the hearing, noted that the objective medical evidence did not support Plaintiff's claims regarding the vision in his left eye, and noted that Plaintiff made inconsistent statements about his functional capacity.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at Craig's step one that Plaintiff had impairments that could reasonably be expected to cause the alleged symptoms but that the statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity ("RFC"). However, a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).[2] The ALJ considered and discussed the medical evidence of record and Plaintiff's

---

[2] Additionally, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.

7

testimony in detail. (Tr. 16-19). Regarding the Plaintiff's credibility, the ALJ concluded that Plaintiff's subjective testimony as to the extent of his limitations was not credible to the extent it was not consistent with the RFC he found. The ALJ concluded as follows:

> Claimant testified that he cannot see anything with his right eye. He reported that he has some vision in his left eye but that he has trouble seeing out of the sides of that eye. He also reported that he experiences blurriness in his left eye. Claimant stated that he experiences migraines which are preceded by a feeling of heaviness in his right eye. Claimant testified that water runs from his right eye. He reported that he sees spots in his left eye and everything becomes dim. He stated that he does not do any yard work because of his vision problems and because he does not want to get anything in his eyes. Claimant testified that since 2009 he has not cooked, except to heat soup, due to his vision problems. He stated that he can read for only 2 to 4 minutes with his left eye before his vision becomes blurry. He reported that he uses eye drops every day but that he does not have insurance and cannot afford eye surgery.
>
> After careful consideration of the evidence, I find that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects fo these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.
>
> Claimant's subjective complaints to his physicians, the objective findings documented in his treatment notes, and the treatment he has required do not support a finding that his severe impairments prevent him from performing all work. In May 2009, claimant reported decreased vision in both eyes and occasional left eye blurriness. He further reported occasional pain in his right eye, occasional floaters, and redness and itching in both eyes. Treatment records, however, do not reveal that claimant described limitations to any examining eye care professional, or any other medical provider, which are as significant as the limitations he alleged in association with his claim for benefits. For example, he did not report at his eye examinations that he is only able to read for 2 to 4 minutes with his left eye, that he is unable to cook, or that he is unable to do yard work. Furthermore, although claimant testified that he has migraines that are preceded by a feeling of heaviness in his right eye, his

---

1994); see also Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (citation omitted); See Johnson, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

treatment records do not support a finding that his eye problems cause him to have headaches.

The objective medical findings documented in claimant's treatment notes support a finding that he is able to perform work consistent with his assigned residual functional capacity. Eye examinations performed in March 2009, May 2009, June 2009, and February 2010 reveal vision in clamant's right eye of only hand motion to light perception. Despite such limited visual acuity in his right eye, however, claimant is reported to have considerably better visual acuity in his left eye during the relevant time period. The uncorrected vision in claimant's left eye ranged between 20/70 to 20/60 in May 2009, June 2009 and February 2010. He had corrected distance vision of 20/25 in his left eye and corrected reading vision of 20/20 in his left eye in March 2009 in May 2009, the corrected vision in clamant's left eye was 20/20+1. Nevertheless, claimant had a mild loss of visual field in his left eye in March 2009. Upon examination in March 2009, claimant was reported to have intraocular pressure of 47 in his right eye and of 230 in his left eye. By May 2009, however, claimant's intraocular pressure had improved and was reported to be 24 in each eye. Claimant was assessed by consultative examiner, Edward Johnson, O.D., and his treating ophthalmologist, Isam Zarhoon, O.D., to have glaucoma and cataracts.

Dr. Zarhoon reported in an undated document contained in Exhibit 5F that claimant is legally blind in his right and left eyes. His assessment that claimant is legally blind in his left eye, however, is inconsistent with Dr. Zarhoon's own findings upon examination as well as the other evidence of record. Moreover. Dr. Zarhoon reported in September 2010 that clamant was totally blind in his right eye but that he had only significant constriction of the field of vision in his left eye. The record does not document restrictions which would be inconsistent with a finding that claimant could perform work at his assigned residual functional capacity. Dr. Johnson stated in March 2009 that claimant should avoid any activity requiring binocular vision. Records in evidence, however, do not document any additional restrictions placed upon claimant. Dr. Zarhoon indicated no exertional limitations on the above referenced undated document contained in Exhibit 5F. In September 2010, Dr. Zarhoon specifically stated that he could not make a statement regarding whether claimant has any exertional or manipulative limitations.

Claimant has not required much treatment for his severe impairments during the relevant time period. Treatment notes document that he was prescribed eye drops such as Travatan, Timoptic, and Lumigan. Although claimant testified that he cannot afford eye surgery, the evidence of record does not support a conclusion that the limitations imposed by claimant's glaucoma, cataracts, and right eye blindness would prevent him from performing all work.

> Claimant's own statements further support a finding that he can perform work consistent with his residual functional capacity. Statements made by claimant prior to the hearing contradict his testimony. For example, while claimant testified that he does not do yard work, he stated in February 2009 that he passes his time by working around the yard and raking. He reported that his friend owns a landscaping service and that in the summer he assists his friend with yard work. Claimant testified that he can only read 2 to 4 minutes before the vision in his left eye becomes blurry, but he stated in December 2009 that he could see large print. It is relevant to note, however, that the ability to read for more than 2 to 4 minutes is not particularly relevant to the performance of unskilled work. Although claimant testified that he no longer cooks, he stated in December 2009 that he cooks and that he can read the knobs on the stove well enough to do so. Other statements made by claimant prior to the hearing further support a conclusion that he is not disabled. In February 2009, claimant reported that he is independent with bathing and grooming activities. He stated he could see well enough to walk without bumping into things. In December 2009, claimant reported that he could distinguish different coins, make telephone calls, and watch television without significant difficulty.

(Tr. 16-18).

The ALJ concluded that even though Plaintiff had the medically determinable impairments that could reasonably be expected to cause the alleged symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with his residual functional capacity assessment. Based on the evidence before the ALJ, the court concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible.[3]

## Hypothetical to VE

---

[3] The court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Plaintiff argues that while the ALJ found that Plaintiff was capable of work at all exertional levels, subject to his limited vision, no party explained exactly how Plaintiff's serious visual impairments would inhibit his ability to do any work, much less the jobs described. Plaintiff argues that no evidence was taken to support the ALJ's finding that he could perform work at an exertional level greater than he had before. Plaintiff states that "...the ALJ's conclusion that Mr. Keels is incapable of performing his past work is inconsistent with his RFC assessment-that Mr. Keels could perform work at all exertional levels." (Plaintiff's brief). Further, Plaintiff argues that since the Dictionary of Occupational Titles (DOT) does not address visual acuity or visual field requirements in any way, any testimony by the VE on the matter would have to be based entirely on his own personal observations and the ALJ in this case did not verify this.

Defendant argues that the ALJ reasonably relied on the VE's testimony to find Plaintiff not disabled. Defendant asserts the ALJ posed a hypothetical question to the VE that included all the limitations the ALJ found credible and the RFC which is consistent with the opinion of Plaintiff's eye treating professional, Dr. Zarhoon, and the state agency physicians. Defendant contends the VE testified what jobs Plaintiff could perform and how many existed. Further, Defendant asserts the VE stated that his testimony was consistent with the DOT and that since the DOT does not address visual acuity or field of vision, there can be no conflict..

The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). If the ALJ finds that a claimant cannot return to his prior work, the burden

of proof shifts to the Commissioner to establish that the claimant could perform other work, considering the claimant's RFC, age, education, and past work experience.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

In this case, the ALJ found Plaintiff has the following RFC:

> . . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant must avoid workplace hazards such as machinery and unprotected heights. He must also avoid activity requiring good binocular vision.

(Tr. 16).

The ALJ's finding regarding Plaintiff's RFC is consistent with 10 C.F.R. §§ 404.1567(b) and 416.967(b). The decision reflects that the ALJ properly reviewed all of the evidence in determining

12

Plaintiff's RFC. Hays v. Sullivan, 907 F.2d 1453,1456 (4th Cir. 1990) (It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence); see also Clarke v. Bowen, 843 F.2d 271, 272–273 (8th Cir.1988) ("The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"). The ALJ's finding that Plaintiff could perform work at all exertional levels but with restrictions is supported by substantial evidence in the case record. See English v. Shalala, 10 F.3d 1080, 1084 (4th Cir.1993) (finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1993) (ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints). Therefore, this Court finds that the ALJ's opinion sufficiently explained how he determined Plaintiff's RFC. See, e.g., Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006) ("In light of SSR 96–8p, [the ALJ's] conclusion (that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight-hour day.) Therefore, the ALJ did not err in his assessment of Plaintiff's RFC and the decision should be affirmed.

As to Plaintiff's argument that the testimony of the VE and the DOT were inconsistent for which the ALJ failed to resolve pursuant to SSR 00-4p, the argument fails. Social Security Ruling 00–4p requires, in pertinent part, that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is

> disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE ... evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00–4p, 2000 WL 1898704 (2000). Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the testimony of the VE and the DOT before relying on the VE to support a determination about whether the claimant can perform such work. In this case, the ALJ specifically asked the VE to point out if any of his testimony varied from the information contained in the DOT. The VE did not identify any inconsistencies or testify that his testimony was consistent with the DOT.[4] Additionally, the argument fails because the DOT does not address visual acuity or field vision so that it is not apparent that the testimony conflicts with the DOT. Thompson v. Astrue, supra *citing* Zblewski v. Astrue, 302 Fed. App'x 488, 494 (7th Cir. 2008)("Because the DOT does not address the subject of sit/stand options, it is not apparent that the [sit/stand] testimony conflicts with the DOT.").

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock,

---

[4] Nothing has been presented showing that any testimony is in conflict with the DOT and the RFC given by the ALJ or the opinion of the VE.

483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

                           s/Thomas E. Rogers, III
                           Thomas E. Rogers, III
                           United States Magistrate Judge

February 22, 2013
Florence, South Carolina